IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ALANS CORNER, LLC ) | Case No. 17-12669-BFK |
| ) | Chapter 7 |
| Debtor ) | |

**TRUSTEE'S MOTION FOR APPROVAL OF**
**SETTLEMENT OF ADVERSARY PROCEEDING**

Janet M. Meiburger, Chapter 7 Trustee, by her undersigned counsel, hereby moves, pursuant to Fed. R. Bankr. P. 9019, for approval of the settlement she has reached with Discovery Station, LLC, KinderCare Education, LLC and the United States Small Business Administration. This settlement resolves Adversary Proceeding No. 17-01132 against Discovery Station, LLC (the "Adversary Proceeding"). In support of this Motion, the Trustee states as follows:

1. On August 3, 2017 (the "Petition Date"), Alans Corner, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Janet M. Meiburger was duly appointed as Chapter 7 Trustee on August 4, 2017 and she continues to serve in that capacity.

1. On December 11, 2017, the Trustee filed the Adversary Proceeding against Discovery Station, LLC ("Discovery Station"). The Complaint in the Adversary Proceeding alleged that on May 15, 2009, Discovery Station entered into a lease (the "Lease") to occupy the property owned by the Debtor located at 43184 Town Hall Plaza, Chantilly, Virginia 20152 (the

---
Janet M. Meiburger, VA Bar No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
(703) 556-7871
Counsel for Chapter 7 Trustee

"Property"); that Discovery Station operated a child care center at the Property; and that Discovery Station was in default under the Lease for nonpayment of rent. The Complaint sought a judgment for the unpaid rent and to obtain possession of the Property.

2. Discovery Station did not respond to the Complaint. A default judgment was entered against Discovery Station on April 17, 2018, as to both the turnover of possession and the unpaid, but was not reduced to a money judgment for the unpaid rent, on which the Trustee could commence collection.

3. Subsequently, the Trustee filed a motion for entry of a money judgment against Discovery Station in the amount of $344,072.97, which is the minimum amount that the Trustee could determine to be owed in unpaid rent. This motion is pending.

4. In the meantime, the Trustee listed the Property for sale, and on May 3, 2018, an order was entered approving the sale of the Property (Docket No. 54). In connection with the sale, the Trustee also obtained approval to reject the Lease (Docket No. 52). The sale went to closing on July 20, 2018, and a Report of Sale was filed on August 16, 2018 (Docket No. 56).

5. Discovery Station vacated the Property prior to the closing on the sale, and the Property is now occupied by KinderCare Education, LLC ("KinderCare").

6. In connection with the sale, Discovery Station and KinderCare negotiated an asset purchase agreement which provided for KinderCare to pay $35,000.00 for certain assets of Discovery Station. However, the United States Small Business Administration ("SBA") held a lien on those assets.

7. Under the terms of the settlement, Discovery Station will sell the assets to KinderCare for $35,000.00; the SBA will release its lien for $5,000.00 of the proceeds; and the remaining $30,000.00 is to be paid to the bankruptcy estate to settle the Adversary Proceeding.

The terms of the sale and the settlement are incorporated into the Asset Purchase Agreement which is attached as Exhibit A.

8.      Once the $30,000.00 payment is received, the Adversary Proceeding will be dismissed with prejudice.

9.      The legal standard for determining the propriety of a bankruptcy settlement is whether the proposed settlement is fair and equitable.  "[T]he court is to consider the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of creditors with proper deference to their reasonable views."  In re Austin, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995).  The Trustee believes that the settlement is in the best interest of creditors because it reflects a fair compromise given the difficulty of collecting any judgment from Discover Station, which is now out of business, and it makes it unnecessary to incur additional expenses for the pursuit of the Adversary Proceeding.

WHEREFORE, Janet M. Meiburger, Chapter 7 Trustee, by counsel, hereby respectfully requests that the Court enter an order approving the settlement of Adversary Proceeding No. 17-01132, as described herein, and granting such other and further relief as the Court deems appropriate under the circumstances.

                                                                             Respectfully submitted,

                                                                             The Meiburger Law Firm, P.C.

Dated: August 30, 2018                      By: /s/ Janet M. Meiburger
                                                             Janet M. Meiburger (VSB No. 31842)
                                                             The Meiburger Law Firm, P.C.
                                                             1493 Chain Bridge Road, Suite 201
                                                             McLean, VA  22101
                                                             (703) 556-7871
                                                             Counsel for Chapter 7 Trustee

**CERTIFICATE OF SERVICE**

I HEREBY certify that on this 30th day of August, 2018, a true and correct copy of the foregoing Trustee's Motion for Approval of Settlement of Adversary Proceeding will be served by ECF e-mail pursuant to the applicable Standing Order of the Court, and by first class mail, postage prepaid, without this certificate of service, on the following, and that a true and correct copy (without this certificate of service) will be served by BK Attorney Services, LLC d/b/a certificateofservice.com to the attached list.

    William Harville, Esq.
    327 W. Main Street, #3
    Charlottesville, VA 22903
    *Counsel to Discovery Station, LLC*

    Justin Cabrera, Esq.
    Lane Powell PC
    601 SW Second Avenue, Suite 2100
    Portland, OR 97204
    *Counsel to KinderCare Education, LLC*

                      /s/ Janet M. Meiburger
                      Janet M. Meiburger

```
Label Matrix for local noticing          Alans Corner, LLC                       County of Loudoun, VA
0422-1                                   5484 Rodriguez Lane                     c/o Belkys Escobar
Case 17-12669-BFK                        Haymarket, VA 20169-6102                One Harrison St. SE, (MSC #06)
Eastern District of Virginia                                                     Leesburg, VA  20175-3102
Alexandria
Thu Aug 30 12:31:03 EDT 2018

EagleBank                                The Meiburger Law Firm PC               Treasurer, County of Loudoun, Virginia
c/o Benjamin P. Smith                    1493 Chain Bridge Road                  Attention: Collections/Bankrupty Div.
Shulman, Rogers, Gandal, Pordy & Ecker   Suite 201                               P O Box 347 (MSC #31)
12505 Park Potomac Ave, 6th Floor        McLean, VA 22101-5726                   Leesburg, VA 20178-0347
Potomac, MD 20854-6803

United States Bankruptcy Court           Alan D. Berlin                          Business Finance Group
200 South Washington Street              5484 Rodriguez Lane                     3930 Pender Drive #300
Alexandria, VA 22314-5405                Haymarket, VA 20169-6102                Fairfax, VA 22030-0986


Carolyn H. Berlin                        Discovery Station LLC                   Eagle Bank
5484 Rodriguez Lane                      5313 Kernstown Ct.                      7830 Old Georgetown Road
Haymarket, VA 20169-6102                 Haymarket, VA 20169-4504                3rd Floor
                                                                                 Bethesda, MD 20814-2432


EagleBank                                Mark Albanese, Esq                      Shulman & Rogers
c/o Benjamin P. Smith, Esq.              4041 University Drive                   12505 Park Potomac Ave
Shulman Rogers Gandal Pordy & Ecker, PA  Suite 301                               6th Floor
12505 Park Potomac Ave, 6th Floor        Fairfax, VA 22030-3410                  Potomac, MD 20854-6803
Potomac MD 20854-6803

Treasurer, County of Loudoun, Virginia   U.S. Small Business Admin.              US Small Business Administration
Attention: Collections/Bankruptcy Div.   409 3rd Street SW                       409 3rd Street SW 2d Floor
P O BOX 347 (MSC #31)                    Washington, DC 20416-0005               Washington DC 20416-0005
Leesburg, Virginia 20178-0347


Barry Strickland                         Janet M. Meiburger                      John Paul Goetz
Barry Srickland & Co., CPA               The Meiburger Law Firm, P.C.            John Goetz Law, PLC
P.O. Box 9228                            1493 Chain Bridge Road, Suite 201       86 W. Shirley Avenue
Richmond, VA 23227-0228                  McLean, VA 22101-5726                   Warrenton, VA 20186-3008


Judy A. Robbins
Office of the U.S. Trustee - Region 4
115 South Union Street, Room 210
Alexandria, VA 22314-3361
```

            The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


```
(u)United States of America              (d)Carolyn H Berlin                     (u)Stephen Karbelk
                                         5484 Rodriguez Lane                     Century 21 New Millennium
                                         Haymarket, VA 20169-6102
```

**End of Label Matrix**
Mailable recipients    21
Bypassed recipients     3
Total                  24

Case 17-12669-BFK    Doc 57    Filed 08/30/18    Entered 08/30/18 13:19:25    Desc Main
Document      Page 6 of 19

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), effective as of August ____, 2018, is entered into by and among Discovery Station, LLC, a Virginia limited liability company ("**Seller**"), Janet M. Meiburger, Chapter 7 bankruptcy trustee for Alans Corner, LLC ("**Trustee**") in Case No. 17-12669 in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division ("**Bankruptcy Case**") and KinderCare Education LLC, a Delaware limited liability company ("**Buyer**").

## RECITALS

**WHEREAS**, Seller operated a child care center (the "**Business**") located at 43184 Town Hall Plaza, South Riding, VA 20152, Chantilly, Virginia (the "**Property**") under the name of Discovery Station Learning Center; and

**WHEREAS**, Buyer has purchased the Property, at which time the Business closed; and

**WHEREAS**, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, the rights and obligations of Seller to the Purchased Assets (as defined below), for $35,000.00, subject to the terms and conditions set forth herein; and

**WHEREAS**, the Trustee has obtained a default judgment against the Seller for unpaid rent in Adversary Proceeding No. 17-01132 (the "**Adversary Proceeding**"), but such default judgment has not yet been reduced to a money judgment; and

**WHEREAS**, some or all of the Purchased Assets are subject to a properly perfected lien in favor of the United States Small Business Administration ("**SBA**"); and

**WHEREAS**, Seller and Trustee have reached an agreement that the $35,000.00 will be paid to Trustee in full settlement of the Adversary Proceeding, subject to and conditioned on the SBA's release of its lien for $5,000.00, as described in the next paragraph; and

**WHEREAS**, SBA has agreed to release its lien on the Purchased Assets for $5,000.00, with the remaining $30,000.00 to be received by Trustee free and clear of any lien of SBA; and

**WHEREAS,** the settlement between Seller and Trustee and the agreement with the SBA are subject to Bankruptcy Court approval.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

**Section 1.01    Purchase and Sale of Assets.** Subject to the terms and conditions set forth herein, at the Closing, Seller shall sell, convey, assign, transfer, and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title, and interest in, to, and under the assets set

forth on Schedule 1.01 hereto (collectively, the "**Purchased Assets**"), including (a) any rights in and to, the relationship with, and files associated with, Seller's parents, students and suppliers; and (b) all goodwill and the going concern value of the Purchased Assets and the Business.

**Section 1.02    No Liabilities.** Buyer shall not assume any liabilities or obligations of Seller, or any affiliates of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

**Section 1.03    Purchase Price.** The aggregate purchase price for the Purchased Assets shall be Thirty Five Thousand and No/100 Dollars ($35,000.00) (the "**Purchase Price**"). Five Thousand and No/100 Dollars ($5,000.00) of the Purchase Price shall be paid without offset of any kind to SBA in accordance with instructions to be provided by SBA, and Thirty Thousand and No/100 Dollars ($30,000.00) of the Purchase Price shall be paid without offset of any kind to Trustee by wire transfer of immediately available funds to an account designated in writing by Trustee to Buyer on or before the Closing Date.

## ARTICLE II
## CLOSING

**Section 2.01    Closing.** Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at such time or place or in such other manner as Seller, Buyer and Trustee may mutually agree upon in writing which is within ten (10) business days after entry of an order of the Bankruptcy Court approving the settlement between Seller and Trustee and the agreement with the SBA ("**Approval Order**"). The date on which the Closing is to occur is herein referred to as the "**Closing Date**".

**Section 2.02    Closing Deliverables.**

(a)    At the Closing, Seller shall deliver to Buyer the following: (i) a bill of sale in form and substance attached hereto as **Exhibit A** ("**Bill of Sale**"), duly executed by Seller, transferring the Purchased Assets to Buyer; (ii) an order of the Bankruptcy Court satisfactory to Buyer approving the settlement between Seller and Trustee and releasing the SBA lien on the Purchased Assets upon payment of Five Thousand and No/100 Dollars to SBA; and (iii) such other customary instruments of transfer or assumption, filings, or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to the transactions contemplated herein or as reasonably requested by Buyer (collectively with the Bill of Sale, the "**Transaction Documents**").

(b)    At the Closing, Buyer shall pay to SBA and Trustee, as appropriate, the amount due to each in respect of the Purchase Price.

**Section 2.03    Satisfaction of Encumbrances**. Buyer's obligation to acquire the Purchased Assets and consummate the Closing shall be conditioned upon satisfaction of the following condition:

2

(a) the Purchased Assets shall be free and clear at Closing of, any charge, claim, pledge, equitable interest, lien, security interest, restriction of any kind, or other encumbrance ("**Encumbrance**") on the Purchased Assets.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article III are true and correct as of the date hereof.

**Section 3.01  Authority and Enforceability.** Seller is a Virginia limited liability company. At the time of Closing, Seller will be duly organized and validly existing under the laws of the Commonwealth of Virginia. Seller has full requisite power and authority to enter into this Agreement and the other Transaction Documents to which it is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Seller of this Agreement and any other Transaction Document to which Seller is a party, the performance by Seller of its obligations hereunder and thereunder, and the consummation by Seller of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the Transaction Documents constitute legal, valid, and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

**Section 3.02  No Conflicts or Consents.** The execution, delivery, and performance by Seller of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of the articles of organization, operating agreement, or other governing documents of Seller; (b) violate or conflict with any provision of any statute, law, ordinance, regulation, rule, code, constitution, treaty, common law, other requirement, or rule of law of any governmental authority (collectively, "**Law**") or any order, writ, judgment, injunction, decree, stipulation, determination, penalty, or award entered by or with any governmental authority ("**Governmental Order**") applicable to Seller or the Purchased Assets; (c) require the consent, notice, declaration, or filing with or other action by any individual, corporation, partnership, joint venture, limited liability company, governmental authority, unincorporated organization, trust, association, or other entity ("**Person**") or require any permit, license, or Governmental Order, except as provided herein; (d) violate or conflict with, result in the acceleration of, or create in any party the right to accelerate, terminate, modify, or cancel any contract to which Seller is a party or by which Seller is bound or to which any of the Purchased Assets are subject; or (e) result in the creation or imposition of any Encumbrance on the Purchased Assets.

**Section 3.03  Title to Purchased Assets.** Seller owns and has good and valid title to all of the Purchased Assets, free and clear of Encumbrances other than the SBA lien.

**Section 3.04  Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Seller.

3

**Section 3.05  Legal Proceedings.** There is no claim, action, suit, proceeding, audit, demand, inquiry, or governmental investigation ("**Action**") of any nature pending or, to Seller's knowledge, threatened against or by Seller: (a) relating to or affecting the Purchased Assets; or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action. There are no outstanding Governmental Orders against, relating to, or affecting the the Purchased Assets.

**Section 3.06  Compliance with Laws.** Seller is in compliance with all Laws applicable to the ownership and use of the Purchased Assets.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article IV are true and correct as of the date hereof.

**Section 4.01  Authority of Buyer.** Buyer is a limited liability company duly organized and validly existing under the laws of the State of Oregon. Buyer has full power and authority, including full legal capacity, to enter into this Agreement and the other Transaction Documents to which Buyer is a party, to carry out its obligations hereunder and thereunder, and to consummate the transactions contemplated hereby and thereby. The execution and delivery by Buyer of this Agreement and any other Transaction Document to which Buyer is a party, the performance by Buyer of its obligations hereunder and thereunder, and the consummation by Buyer of the transactions contemplated hereby and thereby have been duly authorized by all requisite action on the part of Buyer. This Agreement and the Transaction Documents constitute legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**Section 4.02  No Conflicts; Consents.** The execution, delivery, and performance by Buyer of this Agreement and the other Transaction Documents to which it is a party, and the consummation of the transactions contemplated hereby and thereby, do not and will not: (a) violate or conflict with any provision of any Law or Governmental Order applicable to Buyer; or (b) require the consent, notice, declaration, or filing with or other action by any Person or require any permit, license, or Governmental Order.

**Section 4.03  Brokers.** No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Buyer.

**Section 4.04  Legal Proceedings.** There are no Actions pending or, to Buyer's knowledge, threatened against or by Buyer that challenge or seek to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

## ARTICLE V
## COVENANTS

4

Section 5.01  **Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other Transaction Documents (including any real property transfer Tax and any other similar Tax) shall be borne and paid by Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such Taxes.

Section 5.02  **Further Assurances.** Following the Closing, each of the parties hereto shall, and shall cause their respective affiliates to, execute and deliver such additional documents, instruments, conveyances, and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the other Transaction Documents.

Section 5.03  **No Successor Liability**. The parties intend that, except where expressly prohibited under applicable Law, upon the Closing, Buyer shall not be deemed to: (a) be the successor of Seller; (b) have, *de facto*, or otherwise, merged with or into Seller; (c) be a mere continuation or substantial continuation of Seller or the enterprise of Seller; or (d) be liable for any acts or omissions of Seller arising under or related to the Purchased Assets other than as set forth in this Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, the parties intend that Buyer shall have no successor or vicarious liability of any kind or character, whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Purchased Assets or any liabilities of Seller arising prior to the Closing.

## ARTICLE VI
## INDEMNIFICATION

Section 6.01  **Survival.** All representations, warranties, covenants, and agreements contained herein and all related rights to indemnification shall survive the Closing.

Section 6.02  **Indemnification by Seller.** Subject to the other terms and conditions of this Article VI, Seller shall indemnify and defend Buyer and its affiliates (collectively, the "**Buyer Indemnitees**") against, and shall hold each of them harmless from and against, any and all losses, damages, liabilities, deficiencies, Taxes, Actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees (collectively, "**Losses**"), incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, or with respect to: (a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller pursuant to this Agreement, any other Transaction Document, or any schedule, certificate, or exhibit related thereto; and (c) any Third Party Claim based upon, resulting from, or arising out of the business, operations, properties, assets, or obligations of Seller or any of their affiliates conducted, existing, or arising on or prior to the Closing Date. For purposes of this Agreement, "**Third Party Claim**" means notice of the assertion or commencement of any Action made or brought by any Person who is not a party to this Agreement or an affiliate of a party to this Agreement or a representative of the foregoing.

**Section 6.03    Indemnification by Buyer.** Subject to the other terms and conditions of this Article VI, Buyer shall indemnify and defend each of Seller and its affiliates (collectively, the "**Seller Indemnitees**") against, and shall hold each of them harmless from and against, any and all Losses incurred or sustained by, or imposed upon, the Seller Indemnitees based upon, arising out of, or with respect to: (a) any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement or any schedule, certificate, or exhibit related thereto; and (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Buyer pursuant to this Agreement or any schedule, certificate, or exhibit related thereto.

**Section 6.04    Indemnification Procedures.** Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "**Indemnified Party**") shall promptly provide written notice of such claim to the other party (the "**Indemnifying Party**"). Other than with respect to any claim relating to Taxes, in connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a Person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no Action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

**Section 6.05    Cumulative Remedies.** The rights and remedies provided in this Article VI are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

ARTICLE VII
MISCELLANEOUS

**Section 7.01    Expenses.** All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 7.02    Notices.** All notices, claims, demands, and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or email of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient,;or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following

addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 7.02):

|  |  |
|---|---|
| **If to Seller:** | Discovery Station, LLC<br>c/o William Harville, Esq.<br>327 W. Main Street, #3<br>Charlottesville, VA  22903<br>E-mail: harvillelaw@gmail.com |
|  | Janet M. Meiburger<br>The Meiburger Law Firm, P.C.<br>1493 Chain Bridge Road, Suite 201<br>McLean, Virginia 22101<br>E-mail: janetm@meiburgerlaw.com |
| **If to Buyer:** | KinderCare Education LLC<br>650 NE Holladay Street, Suite 1400<br>Portland, OR  97232<br>Facsimile: (503) 736-1803 |
| With a copy to: | Lane Powell PC<br>601 SW Second Avenue, Suite 2100<br>Portland, OR  97204<br>Facsimile: (503) 778-2200<br>E-mail: cabreraj@LanePowell.com<br>Attention:  Justin Cabrera |
|  | Janet M. Meiburger<br>The Meiburger Law Firm, P.C.<br>1493 Chain Bridge Road, Suite 201<br>McLean, Virginia 22101<br>E-mail: janetm@meiburgerlaw.com |

**Section 7.03    Interpretation; Headings.** This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 7.04    Severability.** If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement.

**Section 7.05    Entire Agreement.** This Agreement and the other Transaction Documents constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any

inconsistency between the statements in the body of this Agreement and those in the other Transaction Documents and exhibits, the statements in the body of this Agreement will control.

**Section 7.06 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted successors and permitted assigns. No party may assign its rights or obligations hereunder, including by merger or operation of law, without the prior written consent of the other parties. Any purported assignment in violation of this Section 7.06 shall be null and void. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 7.07 Amendment and Modification; Waiver.** This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No failure to exercise, or delay in exercising, any right or remedy arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy.

**Section 7.08 Governing Law; Jurisdiction.** This Agreement shall be governed by and construed in accordance with the internal laws of the State of Oregon without giving effect to any choice or conflict of law provision or rule. Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other Transaction Documents, or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, proceeding, or dispute.

**Section 7.09 Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above.

**SELLER:**

DISCOVERY STATION, LLC
By: _/s/ Lee Berlin_
Name: Lee C Berlin
Title: CEO
Date: 8/22/18

**BUYER:**

KINDERCARE EDUCATION LLC

By: _/s/ Tony Amandi_
Name: Tony Amandi
Title: SVP, Finance
Date: August 22, 2018 | 9:22 AM PDT

**TRUSTEE:**

By: _/s/ Janet M. Meiburger_
    Janet M. Meiburger
Date: 8/20/2018

[Signature Page to Asset Purchase Agreement]

# SCHEDULE 1.01

## Purchased Assets

1. Operation Information
   a. Employee data (name, title, pay rate, original date of hire, required regulatory information)
   b. Child data (name, required regulatory information, immunizations, etc.)
   c. General Operation Data (curriculum information, policies and procedure of the Business, etc.)
2. Marketing Materials
   a. Parent contact information and other marketing-related data
   b. Printed or electronic resources used to promote the Business
3. Contracts and Intellectual Property
   a. Websites and domain names relating to the Business
   b. Business phone number
   c. "Discovery Station" name
4. General
   a. Any rights in and to, the relationship with, and files associated with, Seller's customers, students (children), and suppliers
   b. All goodwill and the going concern value of the Purchased Assets and the Business
   c. Cooperation with removal of any items not to be retained by Buyer

## Exhibit A

## Bill of Sale

[See attached]

[Exhibit A]

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Discovery Station, LLC, a Virginia limited liability company ("**Seller**"), does hereby grant, bargain, transfer, sell, assign, convey and deliver to KinderCare Education LLC, a Delaware limited liability company ("**Buyer**"), all of its right, title, and interest in and to the Purchased Assets set forth on **Schedule 1.01** of that certain Asset Purchase Agreement, dated as of the date hereof (the "**Purchase Agreement**"), by and between Buyer and Seller, to have and to hold the same unto Buyer, its successors, and assigns, forever.

Buyer acknowledges that Seller makes no representation or warranty with respect to the assets being conveyed hereby except as specifically set forth in the Purchase Agreement.

Seller for itself, its successors, and assigns, hereby covenants and agrees that, at any time and from time to time upon the written request of Buyer, Seller will do, execute, acknowledge, and deliver or cause to be done, executed, acknowledged, and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required by Buyer in order to assign, transfer, set over, convey, assure, and confirm unto and vest in Buyer, its successors, and assigns, title to the assets sold, conveyed, and transferred by this Bill of Sale.

IN WITNESS WHEREOF, Seller has duly executed this Bill of Sale as of _____, 2018.

**SELLER:**

Discovery Station, LLC

By: _/s/ Lee Berlin_
Name: Lee C Berlin
Title: CEO

12